**This order is SIGNED.**


**Dated: June 11, 2021**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>BRICK HOUSE PROPERTIES, LLC,<br><br>Debtor. | Bankruptcy Number: 20-26250<br><br>Chapter 11<br><br>Hon. Kevin R. Anderson |

### MEMORANDUM DECISION DENYING THE
### DEBTOR'S MOTION TO REJECT REAL ESTATE PURCHASE
### CONTRACT WITH VESNA CAPITAL, LLC (DOCKET NO. 7)

The growing population in Salt Lake City is making once-sleepy farming suburbs, like Riverton, Utah, desirable areas for residential development, resulting in a steep appreciation of land prices. This economic environment gave rise to the property disputes in this case. In this case, the Debtor failed to void a real estate purchase contract in a state court action and instead became subject to a specific performance order. The Debtor then filed for bankruptcy and is now seeking to reject the real estate contract in bankruptcy under 11 U.S.C. § 365.[1] For the reasons set forth herein, the Court finds that it cannot approve the Debtor's motion to reject the real estate contract.

---

[1] ECF No. 7.

## I.   Jurisdiction, Venue and Notice

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O), and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1408. Notice of the hearing is found to be adequate in all respects.

## II.   Procedural History

The Debtor, Brick House Properties, LLC (the "Debtor"), filed its Chapter 11 petition for relief on October 21, 2020. On October 29, 2020, the Debtor filed a Motion to Reject Real Estate Purchase Contract with Vesna Capital, LLC (the "Motion to Reject").[2] Notice of the Motion to Reject[3] is proper. On November 6, 2020, the Debtor filed its plan of reorganization (the "Plan").[4] On the same date, Vesna Capital, LLC ("Vesna" or the "Buyer") filed an objection to the Motion to Reject.[5] The Debtor filed its reply to the objection on December 10, 2020.[6] On January 19, 2021, the parties filed a stipulated scheduling order.[7] Each party filed supplemental memoranda a week before the final hearing on April 16, 2021.[8]

The Court conducted an evidentiary hearing on the Debtor's motion to reject on April 23, 2021. George Hofmann appeared on behalf of the Debtor-Movant. Kenneth Cannon and Penrod Keith appeared on behalf of the Creditor-Respondent. At the conclusion of the evidentiary hearing, the Court authorized the parties, if they wished, to submit additional briefs on the issue of whether the real estate purchase contract was executory in light of prior rulings entered by the Utah state

---

[2] ECF No. 7.
[3] ECF Nos. 8 & 9.
[4] ECF No. 12.
[5] ECF Nos. 17 & 18.
[6] ECF No. 25.
[7] ECF No. 31. The Court entered the Scheduling Order on February 5, 2021. ECF No. 36.
[8] ECF Nos. 77 & 80.

court.[9] The Court now issues this Memorandum Decision, which constitutes the Court's findings

of fact and conclusions of law under F. R. Civ. P. 52, made applicable to this contested matter by

Fed. R. Bk. P. 7052 and 9014(c).

## III.    FACTS

The Debtor is an LLC, and its sole member is Emily Aune. The Debtor is the titled owner

of approximately 3.25 acres of desirable real property located in the growing community of

Riverton, Utah—a suburb of Salt Lake City (the "Farm Property"). The Farm Property consists of

a historic farmhouse, a barn, a building used for a Montessori School, and about 1.4 acres of

pastureland. The Farm Property is subject to a trust deed in favor of Zions Bank in the original

amount of $1.181 million and with a balance of $784,098 as of the petition date. Pursuant to an

"Evaluation Report" prepared for Zions Bank, the Farm Property had a value of $1.15 million as

of March 2017.[10] An updated Evaluation Report lists the Farm Property with a value of $1.59

million as of December 2020,[11] which is an increase of $440,000. Based on the updated value, less

the Zions Bank and property tax claims, the Court estimates for purposes of this motion that the

Farm Property has equity of approximately $788,500.

On August 3, 2016, the Debtor and Vesna entered into a Real Estate Purchase Contract (the

"REPC") to sell 1.005 acres of the pastureland for $250,000. Vesna intended to subdivide the land

into two residential building lots (the "Lots").[12] Addendum No. 1 to the REPC provides that the

deadline to close the sale "shall be 10 days after receiving Riverton City Approval of the

Subdivision and Recordation of the Subdivided property."[13] The REPC also contains a provision

---

[9] ECF Nos. 88 & 89.

[10] Debtor's Ex. 23.

[11] Debtor's Ex. 24.

[12] Debtor's Ex. 1 and Vesna's Ex. 32.

[13] *Id.*

giving the purchaser the right to waive clear title as to Zions Bank's lien, and Vesna testified that it is willing to close on the sale even if Zions Bank does not release its lien on the Lots.

Ms. Aune, as the Debtor's principal, asserts that she did not fully understand or realize the consequence of some of the terms of the REPC (e.g., that it would take years for Vesna to obtain subdivision approval for the Lots or that Vesna would use a related entity to provide title services). However, Ms. Aune signed the contract and its addendums on behalf of the Debtor, and there was no evidence of coercion or misrepresentation. The Debtor also asserts that Vesna has not paid the costs to run a gas line to the Montessori school; however, the addendum provides no deadline for when that is to occur, and there was no evidence that Vesna has refused to pay these costs. The Debtor also asserts that Vesna has failed to pay for utility hook-ups to Farm Property buildings; however, the REPC states that it is "in [Vesna's] discretion to complete [this] work within 12 mos of settlement."[14]

Upon execution of the REPC, Vesna immediately moved forward with obtaining Riverton City's approval of its proposed subdivision, but disputes arose between the parties. Ultimately, Vesna commenced an action in the Third Judicial District Court for Salt Lake County, State of Utah, Case No. 180906834 (the "State Court") asserting claims for breach of the REPC, breach of the implied covenant of good faith and fair dealing, injunctive relief, and unjust enrichment.[15] As to the claim for breach of contract, Vesna requested both specific performance and damages. Vesna filed a motion for summary judgment. The Debtor responded with a motion for judgment on the pleadings and a motion to amend its answer to assert the REPC was void due to mistake or illegality—specifically, that it violated Riverton City's building code.[16]

---

[14] *Id.* at Addendum 1, paragraph 3.
[15] Vesna's Ex. 12.
[16] Vesna's Ex. 14.

The State Court entered its decision on October 11, 2019, finding that the REPC was valid, that Vesna had fully performed to the extent it could, and that the Debtor had breached the REPC by interfering with Vesna's ability to obtain approval of its subdivision.[17] The State Court also denied the Debtor's request to void the REPC because any violation of Riverton City's code could be resolved through a variance. As a result, the State Court ordered specific performance, but it was limited to the Debtor obtaining a variance from Riverton City or giving a power of attorney to Vesna to obtain the variance required for approval of the subdivision (the "Specific Performance Order").[18]

As a result of the Specific Performance Order, the parties moved forward with efforts to resolve the variance issue involving the width of driveway access to the Farm Property. But Vesna alleges the Debtor was uncooperative in obtaining approval of the subdivision. After some haggling with Riverton City, the variance issue was resolved in early 2020. However, when the COVID pandemic began, it was difficult, and sometimes impossible, for Vesna to move forward with obtaining the approvals and holographic signatures required for the subdivision plat. Despite these challenges, Vesna was able to secure all but one of the required signatures for plat approval before the Debtor filed for bankruptcy on October 21, 2020.

Since execution of the REPC, Vesna has expended time and resources seeking approval of its subdivision and to close on the Lots. Specifically, Vesna has $250,000 set aside to pay the purchase price; it has bonded at least $80,000 with the sewer district; and it has incurred thousands in attorneys' fees, payroll, and engineering and plat drawing costs. With all the time and resources already devoted to obtaining approval of the subdivision Lots, Vesna testified that it could close

---

[17] *Id*.
[18] *Id*.

on the sale within 60 days – so long as prior city approvals had not lapsed due to the delay from the Debtor's bankruptcy filing.

Due to the COVID pandemic in 2020, the Montessori school experienced a 50-60% decline in enrollment that had a negative impact on the Debtor's cash flow. [19] While the Debtor was current on its mortgage payments as of the petition date,[20] it was in default under the mortgage in that its EBITDA (earnings before interest, taxes, depreciation, and amortization) had fallen below the required level.[21]

The filed and scheduled unsecured claims in this case total $286,930.65.[22] However, 94% (or $269,620.33) of the unsecured claims are insider claims of Ms. Aune and her husband.[23] Excluding these insider claims, the pool of claims in this case consists of the following: (1) non-priority unsecured claims of $17,310.32; (2) property taxes of $17,320.83; and (3) the Zions Bank mortgage claim of $784,098.76.[24]

## IV. DISCUSSION

### A. The REPC Is Not an Executory Contract.

The parties disagree on whether the REPC is an executory contract that can be rejected under 11 U.S.C. § 365.[25] Vesna argues that the State Court's performance order renders the REPC non-executory. Vesna acknowledges that the Specific Performance Order was limited to resolving the variance issue. However, it asserts this is so only because the condition precedent for closing

---

[19] Ms. Aune and her husband control the Montessori School that pays rent to the Debtor.

[20] Proof of Claim 3-1 filed by Zions Bank.

[21] Debtor's Ex. 21.

[22] The Court arrived at $286,930.65 by adding the unsecured amounts listed in the filed proofs of claim. However, if the unsecured creditor did not file a claim, the Court used the amount listed in the Debtor's schedules.

[23] See Schedule F at ECF No. 13.

[24] Proof of Claim 3-1 filed by Zions Bank does not list a pre-petition arrearage amount. But at the hearing, the evidence showed that the Debtor is in default on other loan requirements resulting from its diminished cash flow. *Supra* note 21.

[25] Unless otherwise designated, all subsequent statutory references are to 11 U.S.C.

– the recording of the subdivision plat – had not yet occurred. Thus, the State Court could not at that time order the parties to close the sale. Vesna further argues it was the clear intent of the specific performance order that the Debtor "undertake whatever ancillary actions might be necessary"[26] to close the sale. Finally, Vesna argues that the REPC is not executory because the Debtor's only obligation thereunder is to convey legal title once the subdivision plat is approved and the purchase price is tendered.

In counterpoint, the Debtor argues that REPC is an executory contract under the Countryman definition[27] because there is still the opportunity for a material breach by both sides. The Debtor further argues that the Specific Performance Order was limited to resolving a variance issue and that it did not order the Debtor to close the sale and transfer title to Vesna. Thus, the Specific Performance Order did not alter the executory nature of the REPC.

1. After the Entry of the Specific Performance Order, the REPC was No Longer Executory.

The parties dispute whether the REPC is executory under the Countryman definition of executory contracts in bankruptcy, as adopted by the Tenth Circuit.[28] However, the Court must first consider the impact of the State Court Specific Performance Order: "Courts agree that the phrase 'executory contract' cannot be applied to a judicial order."[29] This is because "[o]nce a judgment for specific performance is entered, the parties' remaining unperformed obligations become non-material, or 'ministerial' acts through which the parties merely carry out the court's directive . . . ."[30]

---

[26] Vesna's Ex. 14 at pg. 5.

[27] *Supra* fn. 26.

[28] *Olah v. Baird (In re Baird)*, 567 F.3d 1207, 1210 (10th Cir. 2009)

[29] *Roxse Homes, Inc. v. Roxse Homes Ltd. P'ship*, 83 B.R. 185, 187 (D. Mass. 1988), *aff'd* 860 F.2d 1072 (1st Cir. 1988).

[30] *Id*. *See also In re Smith*, 269 B.R. 629, 632–33 (Bankr. E.D. Tex. 2001) (finding that prior judicial decree for specific performance rendered real estate contract non-executory); *In re Bassett*, 74 B.R. 361, 362 (Bankr. D. Colo.

Turning to the facts, the Debtor refused to resolve a variance issue with Riverton City to facilitate the subdivision of the Lots. As a result, Vesna filed a complaint in the State Court seeking various forms of relief, including breach of contract and specific performance. On October 11, 2019, the State Court entered the Specific Performance Order that ruled on Vesna's motion for summary judgment, the Debtor's motion for judgment on the pleadings, and the Debtor's motion to amend its answer.[31] The Specific Performance Order contains the following findings:

1.    The REPC is a valid contract.[32]

2.    Vesna fully performed under the REPC "to the extent it was able . . . ."[33]

3.    Vesna's inability to obtain approval of the subdivision from Riverton City, that was a prerequisite to closing the sale, was caused by the Debtor.[34]

4.    The Debtor breached the REPC by interfering with Vesna's ability to obtain plat approval and by its "failure to avail itself of variance procedures in seeking approval of the subdivision of the Subject Property." The Debtor argued that because the sale of the Lots cannot close until approval and recordation of the subdivision plat, it could not have breached the REPC. However, the State Court rejected that defense finding that the Debtor's interference with obtaining plat approval constituted a breach of the REPC.[35]

---

1987) (finding that contract for purchase and sale of real property which is buttressed by prepetition order of specific performance is not executory); *In re High Country Resorts*, 94 B.R. 193, 194 (Bankr. D.N.M. 1988) ("After a judgment has been rendered on a contract it is no longer executory."); *Davidson v. Barstad (In re Barstad)*, 2019 Bankr. LEXIS 1803, at *12, 2019 WL 2479311, at *7 (Bankr. D. Mont. June 12, 2019) (finding that real estate buy-sell agreement was no longer executory due to pre-petition order for specific performance).

[31] Vesna's Ex. 14.

[32] *Id.* at 4.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 4–5.

5.      The Debtor moved for a judgment on the pleadings and to amend its answer to assert that the REPC was void because it violated the Riverton Code. But the State Court denied that request as being legally futile because the code violation could be resolved through a variance. In other words, the State Court denied the Debtor's efforts to void the REPC.[36]

6.      As a result of these rulings, the State Court ordered that pursuant to the case of *Martin v. Rasmussen*, 334 P.3d 507 (Utah Ct. App. 2014), "the specific performance required of Defendant under the Agreement is limited, at this juncture, to seeking a variance from Riverton City with regard to the Subject Property."[37]

However, while the State Court ordered specific performance in favor of Vesna, the parties disagree as to whether its limitation of "seeking a variance from Riverton City" renders the REPC non-executory. Certainly, most grants of specific performance order the seller to convey title. And in such cases, the real estate contract is clearly no longer executory for purposes of § 365.[38] However, the language of the Specific Performance Order deviates from this norm because it states it is limited "at this juncture" to resolving the variance issue. Nonetheless, the Specific Performance Order found the Debtor to have breached the REPC and ordered specific performance to resolve the breach with the obvious intent of facilitating Vesna's efforts to record the subdivision plat and close the sale. Therefore, for the reasons set forth below, the Court finds that the intent of the Specific Performance Order was to remove the Debtor's discretion as to performance under the REPC and to require the Debtor to both stop impeding the sale and to take all ancillary steps necessary to close the sale.

---

[36] *Id*. at 8–10.

[37] *Id*. at 10.

[38] *Supra* notes 29–30.

First, the State Court referenced multiple times that the approval and recording of the subdivision was a condition precedent to closing the sale; however, that condition had not occurred due to the Debtor's interference and inaction. Thus, because the subdivision plat had not yet been approved, the State Court could not, at that juncture, specifically order the Debtor to close the sale and transfer title. Consequently, the State Court ordered as much specific performance as was possible at that time.

Second, the State Court mentioned multiple times that Vesna's inability to obtain plat approval was due to the Debtor's interference, nonperformance, failure to act, revocation of authority, and ultimate breach of the REPC. The State Court held that specific performance is the proper remedy when the seller of real property has interfered with the closing, noting, "where one party interferes with the other's performance, that party cannot invoke that nonperformance as a defense to specific performance."[39] Thus, while the Specific Performance Order was limited "at this juncture"[40] to the Debtor resolving the variance, its intent was to preclude the Debtor from further interfering with Vesna's ability to close the sale.

Third, the State Court held that the Debtor had not taken the "ancillary" actions required by the REPC. It then cited to *Martin v. Rasmussen*,[41] in holding that "a contracting party has the 'responsibility to undertake whatever ancillary actions might be necessary to perform what they agreed to perform.'" The State Court's reliance on *Martin* is relevant because that case likewise involved a property variance needed to complete a transfer of real property. *Martin* held:

> If a zoning variance is necessary to fulfill the requirement that the [party] complete the land transfer, then obtaining that variance is best viewed as part of the obligation to transfer the land, not as an additional undertaking

---

[39] Vesna's Ex. 14 at 5 (citing to *Markham v. Bradley*, 173 P.3d 865, n.7 (Utah Ct. App. 2007)).

[40] *Id*. at 7.

[41] *Id*. (quoting *Martin v. Rasmussen*, 334 P.3d 507, 512 (Utah Ct. App. 2014)).

Based on the condition precedent in the REPC, the Specific Performance Order was necessarily limited to obtaining a variance to facilitate approval of the subdivision. But the Court finds it illogical and inconsistent with Utah law to interpret the Specific Performance Order as only intending for the Debtor to obtain the variance and then be free to otherwise to breach the REPC by further obstructing approval of the subdivision, or refusing to convey legal title once the variance was resolved, the subdivision plat recorded, and the purchase price tendered.

Therefore, based on the findings, language, and tenor of the Specific Performance Order, the Court finds that the State Court's intent was to require the Debtor to take all steps necessary to facilitate Vesna's ability to obtain approval of the subdivision, with the larger purpose being that once Vesna recorded its subdivision plat, the Debtor was to transfer legal title to Vesna as required by the REPC. As such, the Debtor's performance under the REPC, both as to the variance and transfer of title when the subdivision plat was recorded, was no longer discretionary or executory, but was merely a ministerial act necessary to carry out the State Court's directive.[42] Therefore, the Court finds that under the Specific Performance Order, the REPC is no longer executory and cannot be rejected by the Debtor under § 365.

> 2.    Under Utah Law, the REPC is Not Executory Because the Debtor's Only Remaining Obligation is to Convey Legal Title Upon Tender of the Purchase Price.

In the alternative, the Court finds that the REPC is not executory because the Debtor's only remaining obligation thereunder is to convey legal title to Vesna. The Tenth Circuit has adopted the Countryman test for determining whether a contract is executory, which looks at whether "the

---

[42] *Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership*, 83 B.R. 185, 187 (D. Mass. 1988), *aff'd* 860 F.2d 1072 (1st Cir. 1988) (explaining that once a judgment for specific performance is entered, the parties' remaining unperformed obligations become non-material, or 'ministerial' acts through which the parties merely carry out the court's directive . . .").

obligation of both the bankrupt and the other party are so far unperformed that the failure of either

to complete performance would constitute a material breach excusing performance of the other."[43]

However, the Seventh Circuit pragmatically observed that if too broadly applied, the

Countryman test could render all contracts executory regardless of their completion status:

> Taken literally, this definition would render almost all agreements executory since
> it is the rare agreement that does not involve unperformed obligations on either
> side. In our view, however, this interpretation would not effect the intent of
> Congress. Rather, we believe that Congress intended § 365 to apply to contracts
> **where significant unperformed obligations remain on both sides**.[44]

The Tenth Circuit agreed with the Seventh Circuit in *Olah v. Baird (In re Baird)*[45] :

> If *Myers* stood for the proposition that any contract was executory that had "future
> obligations" left unfulfilled, however immaterial, then the "definition would render
> almost all agreements executory since it is the rare agreement that does not involve
> unperformed obligations on either side." *In re Streets & Beard Farm P'ship*, 882
> F.2d 233, 235 (7th Cir. 1989). Rather, the remaining obligations have to be
> **significant**, which, following Countryman and *Thomas American Stone &*
> *Building*, we construe to be obligations which, if either side failed to perform them,
> would constitute a breach.[46]

Thus, the issue is whether the status of the REPC was such that "significant unperformed

obligations remained on both sides."[47]

Turning to the facts of this case, the Debtor's property interests in both the Lots and the

REPC are determined by state law as of the petition date.[48] As held by the Supreme Court:

> Uniform treatment of property interests by both state and federal courts within a
> State serves to reduce uncertainty, to discourage forum shopping, and to prevent a

---

[43] *Olah v. Baird (In re Baird)*, 567 F.3d 1207, 1210 (10th Cir. 2009) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973)).

[44] *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989) (emphasis added).

[45] *In re Baird*, 567 F.3d 1207 (10th Cir. 2009).

[46] *Id*. at 1211 (emphasis in original).

[47] *In re Streets & Beard Farm P'ship*, 882 F.2d at 235.

[48] § 541; *Butner v. United States*, 440 U.S. 48, 55 (1979) (holding that property interests in bankruptcy are "created and defined by state law.").

party from receiving "a windfall merely by reason of the happenstance of bankruptcy."[49]

The Utah Supreme Court has clarified that the doctrine of equitable conversion applies to non-installment land sales contracts such that once a real estate purchase contract is capable of being specifically performed, it alters the parties' property interests:

> "The doctrine of equitable conversion applies to transform a seller's interest in a land sale contract from a real property interest into a personal property interest." *Cannefax v. Clement*, 818 P.2d 546, 548 (Utah 1991). Similarly, "the buyer is said to convert the monetary interest that he has in the property to an interest in real estate so that he may invoke the powers of an equity court to compel specific performance of the real estate contract." *Butler v. Wilkinson*, 740 P.2d 1244, 1255 n.5 (Utah 1987).[50]

As to the specific performance requirement, Utah law does not "require an actual breach of the contract by the seller for equitable conversion to apply—it's sufficient that the transfer of title is solely dependent upon events outside of the seller's hands, entitling the buyer to specific performance if the seller fails to perform."[51]

As noted above, the State Court entered the Specific Performance Order requiring the Debtor to resolve the variance issue, and the responsibility of the condition precedent—approval of the subdivision—then rested solely with Vesna. Further, the evidence established that at all times Vesna has been—and continues to be—ready, willing, and able to close the sale once the subdivision plat is recorded.

Furthermore, once Vesna became entitled to the remedy of specific performance, the Debtor held legal title to the Lots in a kind of trust relationship for Vesna:

> The equitable conversion doctrine holds that when parties enter into a sales contract that is subject to specific performance, the equity court will regard the seller as a

---

[49] *Id.*

[50] *SMS Fin., LLC v. CBC Fin. Corp.*, 417 P.3d 70, 73 (Utah 2017) (alterations to original quotation removed).

[51] *Id.* at 74.

kind of trustee. He holds legal title, but only for the purpose of performing the contract by conveying to the buyer.[52]

For these reasons, the Court finds that on the petition date, the Debtor's sole ministerial obligation under the REPC was to convey legal title to Vesna, who already holds equitable title, upon the recording of the subdivision plat and Vesna's tender of the purchase price. This is not the type of significant, unperformed obligation by one side that would qualify the REPC as an executory contract under the Countryman definition, as refined by the Tenth Circuit.[53] Thus, the Court finds that the Debtor cannot reject the REPC under § 365.

### B. The Court Should Not Approve the Motion to Reject the REPC Based on Considerations of Comity and the *Rooker-Feldman* Doctrine.

Even if the entry of the Specific Performance Order did not render the REPC non-executory, the Court finds that authorizing rejection of the REPC would violate the concepts of comity, respect for state court rulings, and the *Rooker-Feldman* Doctrine. The comity doctrine preserves proper federal court respect for state court rulings: "There is a strong public policy grounded in the interest of comity between federal and state courts and the notion of federalism, that federal courts should not unnecessarily interfere with state court proceedings."[54]

In comparison, the *Rooker-Feldman* Doctrine is jurisdictional and "bars the lower federal courts [i.e., federal courts other than the Supreme Court] from engaging in appellate review of state-court judgments."[55] The Supreme Court explains that the *Rooker-Feldman* Doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments

---

[52] *Id.* at 75 (quoting DOBBS, LAW OF REMEDIES § 4.3(8) (2d ed. 1993)).

[53] *In re Baird*, 567 F.3d 1207 (10th Cir. 2009).

[54] *Alarid v. Pacheco (In re Pacheco)*, 616 B.R. 126, 132 (Bankr. D. N.M. 2020).

[55] *Campbell v. City of Spencer*, 682 F.3d 1278, 1279–80 (10th Cir. 2012). *See also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983); 28 U.S.C. § 1257 (providing that a final judgment rendered by the highest state court may only be reviewed by the United States Supreme Court).

rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[56] Thus, federal "district courts do not have jurisdiction to review, reverse, or invalidate state court decisions."[57] Further, a federal court should not enter orders that "would negate the state court judgment."[58] "In short, *Rooker-Feldman* does not allow a [party] to seek relief that, if granted, would prevent a state court from enforcing its orders."[59]

The evidence established that at some point after signing the REPC, the Debtor regretted the sale to Vesna. This regret became manifest when the Debtor's intentional "revocation of the agent authorization previously granted in favor of [Vesna] interfered with [Vesna's] performance" under the REPC.[60] It was further manifested in the State Court proceeding where the Debtor not only defended against Vesna's claims for breach of contract and specific performance, but it also affirmatively sought to have the REPC declared void due to mistake and illegality. Clearly, the Debtor wanted out of its agreement to sell the Lots to Vesna. However, the Debtor lost in the State Court as to both its offensive and defensive efforts to avoid performing under the REPC.

While a motion to reject under § 365 is not an express request for this Court to review the State Court rulings on specific performance, allowing the Debtor to reject the REPC under § 365 will have the practical effect of relieving the Debtor from the rulings and orders of the State Court, preventing the State Court from enforcing its orders, and otherwise excusing the Debtor from selling the Lots to Vesna—which is the very relief it sought for but was denied in the State Court. Absent some specific direction from the State Court to the contrary, the Court has interpreted the

---

[56] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[57] *Raiser v. Kono*, 2006 U.S. Dist. LEXIS 105920, at *10; 2006 WL 8457695, at *4 (D. Utah 2006).

[58] *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004).

[59] *Id*.

[60] Vesna's Ex. 14 at 5–6.

Specific Performance Order as requiring the Debtor to take all ancillary steps necessary to close the sale.

Therefore, the Court finds under the concept of comity and under the jurisdictional bar of *Rooker-Feldman*, it cannot approve rejection of the REPC. If this Court has misinterpreted the scope and intent of the Specific Performance Order, the Court invites the parties to take the matter back to the State Court for clarification.

### C.     Alternatively, the Debtor's Request to Reject the REPC Does Not Satisfy the Applicable Standard of Review for a Motion Under § 365.

Even if the REPC were an executory contract, and even if its rejection did not violate the doctrines of comity and *Rooker-Feldman*, the Court would still deny the motion as not being in the best interests of the estate from the perspective of non-insider claimholders and because it is with not being an appropriate exercise of the Debtor's business judgment. The Debtor asks the Court to approve rejection of the REPC under § 365 based solely on the Debtor's business judgment. In support thereof, the Debtor asserts the estate will benefit by ridding itself of what has become a frustrating, problematic, and unprofitable relationship with Vesna. Further, the Debtor urges the Court to apply the same deferential business judgment standard for a debtor-in-possession as the Court applies to trustees.[61] The Debtor also insists that it is impossible for it to perform under the REPC because Zions Bank will not release its lien on the Lots unless its entire loan balance in the estimated amount of $784,098 is paid in full.[62]

Judge Thuma in the District of New Mexico provided an excellent summary of the standard a bankruptcy court should apply in considering a motion to reject a contract:

---

[61] *See In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981).

[62] As previously mentioned, Vesna is willing to close on the contract even if Zions Bank will not release its lien on the Lots.

Section 365 allows a debtor to reject executory contracts in order to relieve the estate of burdensome obligations. The business judgment standard is the appropriate standard for determining whether a debtor in possession's decision to reject an unexpired lease or executory contract should be approved. In applying this standard, **the Court acts as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession**, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate. Deference is given to the debtor in possession's decision to reject an executory contract or unexpired lease. **The impact that rejection of an executory contract or unexpired lease may have on the estate and a debtor in possession's prospect of confirming a plan, including the effect of the resulting rejection damages claim, is relevant to the determination of whether the Court should approve rejection.** Generally, the Court should not interfere with the debtor in possession's exercise of business judgment to reject a lease or executory contract unless the decision is so manifestly unreasonable that it could not be based on sound business judgment.[63]

The Court is not persuaded that it should, in all instances, apply the same standard of review to a debtor's request to reject an executory contract as it does to a trustee's request. Debtors often enter bankruptcy as a consequence of an ongoing dispute or litigation with a party that can color a debtor's judgment. Bankruptcy trustees are inherently more objective. This distinction is evidenced when, as in this case, the consequences of rejection appear to outweigh the benefits. As noted by the Third Circuit in *In re Columbia Gas System, Inc.*:

Executory contracts in bankruptcy are best recognized as a combination of assets and liabilities to the bankruptcy estate; the performance the nonbankrupt owes the debtor constitutes an asset, and the performance the debtor owes the nonbankrupt is a liability.

. . .

The debtor will assume an executory contract when the package of assets and liabilities is a net asset to the estate. When it is not the debtor will (or ought to) reject the contract.[64]

---

[63] *W. Wood Prods., Inc. v. W. Pellet Prods., LLC (In re W. Wood Prods., Inc.)*, Nos. 11-12-10057 JS, 12-1172 J, 2013 Bankr. LEXIS 1521, 2013 WL 1386285 (Bankr. D.N.M. Apr. 4, 2013) (emphasis added and citations, footnotes, and internal quotes and alterations removed).

[64] 50 F.3d 233, 238–39 (3d Cir. 1995) (citation omitted).

Turning to the facts, the Court finds that the Debtor's decision to reject the REPC is not an objective and reasonable business judgment based on the following considerations: (1) the Debtor's pre-petition interference with closing the sale and its efforts to escape the REPC; (2) the Specific Performance Order against the Debtor; (3) the extensive amount of insider claims versus the relatively small pool of other claims; (4) the probable amount of Vesna's rejection claim; (5) Vesna's willingness to close the sale even if Zions Bank will not release its lien; (6) the likelihood that Vesna can quickly complete the condition precedent to close the sale; and (7) the impact of rejection on both proposing a confirmable plan and paying non-insider claims.

As previously noted, the Debtor interfered with the sale and sought to void the REPC. And the Debtor not only lost in the State Court, but the Court granted Vesna's request for specific performance. The Debtor's owner, Ms. Aune, testified that rejecting the REPC was not a primary motivation in filing the bankruptcy petition. While the Debtor experienced cash flow issues due to the COVID pandemic, the Debtor's prior conduct and litigation, coupled with the body of non-insider claims in this case, leads the Court to conclude that the Debtor's primary motivation behind the bankruptcy filing was to avoid selling the Lots to Vesna.

It is further telling that the insider claims of Mr. and Ms. Aune constitute 94% of the unsecured claims. Even though the Montessori School and other business activities of the Debtor's insider suffered as a result of the COVID pandemic, the pool of non-insider, unsecured claims is only $17,310, the property tax claim is $17,320, and the Debtor is current on mortgage payments.

These facts support a finding that the primary motivation for this bankruptcy filing was to escape the REPC. Indeed, Vesna makes an astute point that if the Debtor simply allowed the sale to close, it would realize its net share of the $250,000 purchase price. This amount would not only pay in full all non-insider claims, but the infusion of cash would ameliorate the Debtor's cash flow

issues. At the hearing, the Debtor did not establish how a rejection of the REPC would be more financially advantageous to both it and its creditors than allowing the sale to close and receiving the sale proceeds. This strongly suggests that the Debtor's motivations in rejecting the REPC are not based on an objective financial analysis.

These circumstances are similar to the case of *Baerg Real Prop. Tr. v. Garland Sol., LLC (In re Baerg Real Prop. Tr.)*, where the court found:

> The bankruptcy case was filed, principally, to avoid selling the Properties to Garland Solution. Although the Bankruptcy Code contains no specific requirement that a chapter 11 petition must be filed in good faith, it is well established that good faith is an implied prerequisite to filing under chapter 11. To permit the debtor-in-possession to undo valid contracts whenever it alone might benefit would introduce much uncertainty into private bargaining and lead to abuse.[65]

The Court concurs with *Baerge* that allowing the Debtor to reject the REPC is an abuse of the Debtor's business discretion. The Court bases this finding on the following: (1) the history of the parties' disputes; (2) the Debtor's interference with the sale closing; (3) the outcome of the State Court litigation; and (4) the relatively minimal non-insider, unsecured claims in this case.

Next, the consequences of rejection further establish an abuse of the Debtor's business discretion. If the Court grants the motion to reject the REPC, Vesna will be entitled to an unsecured claim for damages.[66] The amount of damages will be calculated under Utah law.[67] Such damages will be comprised of the value of Vesna's time and money incurred since 2016 in seeking approval of the subdivision.[68] More significantly, it will also include damages for the difference between

---

[65] 585 B.R. 373, 389 (Bankr. N.D. Tex. 2018).

[66] *See* § 365(g); *King v. Baer*, 482 F.2d 552, 557 (10th Cir. 1973) (ruling that rejection of a contract in bankruptcy "entitles the other party to the contract to assert a claim for such breach for determination by the court.").

[67] *In re W. Real Estate Fund*, 922 F.2d 592, 595 (10th Cir. 1990) (holding that contract rejection damages in bankruptcy are determined under state law).

[68] *McCleve Props., LLC v. D. Ray Hult Fam. Ltd. P'ship*, 307 P.3d 650, 657 (Utah Ct. App. 2013) (explaining that damages for breach of contract consist of general or direct damages, including the loss of the bargain between the

the contract price of $250,000 and the value of the Lots as of the petition date.[69] The parties were understandably hesitant to estimate the amount of such damages, but given the testimony and evidence at trial, the Court believes the damages would likely be several hundred thousand dollars. Further, it was clear from the hearing that the calculation of the rejection damages would be hotly contested by both sides. Given the parties' history and the tenor of their interactions in the bankruptcy case, the Court views this as the likely outcome. A contested hearing on damages would also result in more delay and expense in moving towards a confirmable plan.

Further, the Farm Property and the Lots have substantially appreciated since 2016, creating an estimated $788,500 in equity. Under the best interest of creditors test of § 1129(a)(7)(A)(ii), that substantial equity will likely require a 100% return on Vesna's rejection claim. Thus, it appears that Vesna, and not the Debtor, will be the primary beneficiary of the Lots' appreciation. Vesna further argues that because of such equity, the estate will incur additional expenses in a contested confirmation hearing as to the required return on Vesna's rejection claim. The Court agrees that this is the probable outcome if the REPC is rejected.

In summary, the Debtor's manager testified that the motivation for rejecting the REPC is simply to be rid of Vesna and the problematic REPC so it can move on in its reorganization efforts. But the Court perceives a different reality and consequence. From the evidence and testimony at the hearing, the Court concludes that Vesna is on the cusp of recording the subdivision plat and then closing the sale. All that is required of the Debtor under the REPC and the Specific Performance Order is to stop impeding Vesna's efforts. Once the sale closes, the Debtor will receive the sale proceeds and the other benefits of the REPC (e.g., Vesna's promised utility

---

contract price and the property value, and consequential or special damages that were reasonably foreseeable at the time of the contract's execution).

[69] *Id*.

improvements to the Farm Property) that will allow the Debtor to either confirm a plan or to exit bankruptcy because the sale proceeds will resolve its financial difficulties. In contrast, a rejection of the REPC will continue the parties' disputes before this Court involving the liquidation of Vesna's rejection damages and confirmation of a plan. This continued litigation will consume the Debtor's time and resources and result in prejudice and delay to non-insider creditors without any perceivably greater return to such creditors or to the Debtor.

Based on these considerations, the Court cannot find that the rejection of the REPC evidences an objective and reasonable exercise of the Debtor's business judgment. On the contrary, the facts establish that the rejection of the REPC is not in the best interests of the estate and evidence that the Debtor's desire to reject the REPC is based on emotion and animus rather than objective financial analysis.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that the REPC is not an executory contract that can be rejected under § 365. In the alternative, the Court finds under the concepts of comity and *Rooker-Feldman* that it should not approve the Debtor's motion to reject the REPC. Finally, the Court finds that the Debtor has not established that its decision to reject the REPC satisfies the applicable business judgment standard. Therefore, the Debtor's Motion to Reject will be DENIED.

An order accompanies this memorandum decision.



## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION DENYING THE DEBTOR'S MOTION TO REJECT REAL ESTATE PURCHASE CONTRACT WITH VESNA CAPITAL, LLC (DOCKET NO. 7)** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Kenneth L. Cannon kenneth.cannon@dentons.com, kristin.hughes@dentons.com
- P. Matthew Cox bankruptcy_pmc@scmlaw.com, ec@scmlaw.com
- George B. Hofmann ghofmann@ck.law, dhaney@ck.law;mparks@ck.law
- Penrod W. Keith penrod.keith@dentons.com, kristin.hughes@dentons.com
- Timothy E. Nielsen tnielsen@ck.law, klopez@ck.law
- Jeffrey L. Trousdale jtrousdale@cohnekinghorn.com, mparks@cohnekinghorn.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.